UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

ROGER WAGNER,

                          Plaintiff,

      v.

STOUT STREET FUND I L.P., DELSHAH
CAPITAL LLC, DELSHAH MANAGEMENT
LLC, GRIFFON LORING LLC, LORENZO
DELUCA and DAVID PELLEGRINO,

                          Defendants.

NOT FOR PUBLICATION

**MEMORANDUM AND ORDER**
13-CV-4256 (MKB)

---------------------------------------------------------------X

MARGO K. BRODIE, United States District Judge:

On July 29, 2013, Plaintiff Roger Wagner filed the above-captioned *pro se* action against the Stout Street Fund I L.P., Delshah Capital LLC, Delshah Management LLC, Griffon Loring LLC, Lorenzo Deluca and David Pellegrino, along with a request for emergency injunctive relief against the above-named real estate companies and individuals. Plaintiff paid the filing fee to commence this action. For the reasons set forth below, the Complaint is dismissed for lack of subject matter jurisdiction. As there is no basis for subject matter jurisdiction, the Court cannot consider Plaintiff's request for a preliminary injunction.

    **I. Background**

Plaintiff entered into a real estate contract on September 2, 2007 with Defendant Stout Street Fund I L.P. and other entities who are not named as defendants in this action. (Compl. ¶¶ 4, 5.) The contract was for a mortgage to purchase real property located at 442 Amber Street, Brooklyn, New York. (*Id.*) Plaintiff alleges that the contractual obligations were never completed. (Compl. ¶¶ 4, 6.) He states that "I would not have entered a contract if I had known

about the Criminal Activities of the Developer, which is why I believed they Never had Intentions to do right from the beginning. This led me to file a UCC-1 Lien to protect my interest." (Compl. ¶¶ 4, 9–10.) Thereafter, Plaintiff alleges, the property was fraudulently sold to Defendant Delshah Capital and other entities, without regard to the liens filed by Plaintiff. (Compl. ¶¶ 4, 10–11, 14.) Plaintiff alleges that as a result of Defendants' breach of contract, he has suffered financial harm and is in immediate danger of eviction from the property. (Compl. ¶¶ 4, 8, 12–13, 23–24.)

Plaintiff has attached a series of exhibits to the Complaint. Exhibits A and C are comprised of copies of commercial liens and UCC financing statements filed with the State and City of New York against properties located on Stanley Avenue, Sapphire Street, Emerald Street, Loring Avenue, and Amber Street, but not including 442 Amber Street, and other properties held by listed Lien Debtors, identified as Loring Estates, Thomas Kontogiannis and Strout Street Fund LP. The Claim of Lien is dated August 4, 2012 and claims $300,000,000, but no contract or other document establishing entitlement to the lien amount is included. (Exhibit A, ECF pp. 12–15.) Additional financing statement amendments are dated April 8, 2013, April 13, 2013, April 17, 2013, April 25, 2013, May 9, 2013 and May 30, 2013, and add additional properties and debtors, including Defendants Delshah Management LLC, Delshah Capital, and Griffon Loring LLC. (Exhibit C, ECF pp. 26–33.)

Exhibits B and E purport to establish binding procedures for liens filed under state law. Exhibit B claims "As a matter of law, once perfected, a commercial lien can only be defeated through, [sic] a federal trial process or a Satisfaction of lien by debtor(s)." (Exhibit B, ECF p. 24.) Exhibit E is entitled "Affidavit of Obligation: Commercial Lien" and claims a series of

"Maxims" including: "Truth as a valid statement of reality is sovereign in commerce" and "It is against the law for a Judge to summarily remove, dismiss, dissolve or diminish a Commercial Lien. Only the Lien Claimant or a Jury can dissolve a commercial lien." (Exhibit E, ECF pp. 39, 40.)

Exhibit F consists of a copy of a May 30, 2013 Order issued by the New York Supreme Court, Kings County in a foreclosure proceeding, Index No. 25128/2011. The Order finds Plaintiff to be in contempt of a May 3, 2012 Receivership Order, levies a fine of $250, orders disgorgement and costs, and enjoins Plaintiff from entering or interfering with specified properties located on Sapphire Street and Stanley Avenue. (Exhibit F, ECF pp. 47–50.) The attached copy is stamped "VOID ORDER," but it is not clear whether the stamp was added by the issuing court or by another party.

Exhibit H consists of a January 3, 2013 Deed granted to "Griffon Loring LLC C/O Delshah Capital" for properties located at Stanley Avenue, Amber Street, Sapphire Street, Loring Avenue, and Emerald Street, but not including 442 Amber Street. (Exhibit H, ECF pp. 58–60.) It also includes a copy of a printout from "The Real Deal: New York City Real Estate News" describing the January 3, 2013 purchase of multiple properties previously owned by companies related to Thomas Kontogiannis, after Kontogiannis was indicted for his role in "an illegal $92 million mortgage scheme using straw buyers and homes in Brooklyn and Queens." (Exhibit H, ECF p. 70.) The final attachment is a May 17, 2013 letter from Delshah Management addressed to "Dear Tenant Resident" introducing "your new property management company." (Exhibit H, ECF p. 71.)

The Complaint demands that Defendants be held criminally liable for their actions under Sections 286, 287, 1001, 1651, 1652, 1653, 1655, 1656, 1659 and 1660 of the United States Criminal Code. Plaintiff also seeks to have "all previous orders of all lower courts vacated concerning the properties, and possession of properties turned over to Roger Wagner for Possession." He also demands $300,000,000 in punitive damages. (ECF p. 8.)

In addition to the Complaint, Plaintiff filed an "Emergency Order to Show Cause for Preliminary Injunction and Temporary Restraining Order" requesting that Defendants be enjoined from "peaceful possession by the UCC-1 holder and cease and desist any ejectment or eviction in violation of UCC-1 law" and from "quiet possession per writ of attachement [sic] and levy." (ECF, Entry # 2.)

## II. Discussion

### a. Standard of Review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* In reviewing a *pro se* complaint, the court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). If

a "liberal reading of the complaint gives any indication that a valid claim might be stated," this Court must grant leave to amend the complaint. *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)); *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of New York*, 579 F. 3d 176, 183 (2d Cir. 2009)).

Regardless of whether a plaintiff has paid the filing fee, a district court has the inherent power to dismiss a case, *sua sponte*, if it determines that the action is frivolous or the court lacks jurisdiction over the matter. *Houston v. Manheim-New York*, 475 F. App'x 776, 779 (2d Cir. 2012) (quoting *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363–64 (2d Cir. 2000)), *cert. denied*, 133 S. Ct. 654 (2012); Fed. R. Civ. P. 12(h)(3). "Issues relating to subject matter jurisdiction may be raised at any time, even on appeal, and even by the court *sua sponte*." *Guggenheim Capital, LLC v. Birnbaum*, No. 11-CV-3276, 2013 WL 3491280, at *3 (2d Cir. July 15, 2013) (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)); *see Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed."); Fed. R. Civ. P. 12(h)(3). Federal subject matter jurisdiction is available only when a "federal question" is presented or when plaintiff and defendant are of diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331 and 1332. A court has federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331; *see also Robinson v. Moore*, No. 13-CV-3539, 2013 WL 3863916, at *3 (E.D.N.Y. July 24, 2013) ("Federal question jurisdiction may be properly

invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of federal law." (quoting *State of New York v. White*, 528 F.2d 336, 338 (2d Cir. 1975))).

### b. Lack of Subject Matter Jurisdiction

Plaintiff asserts the Court's jurisdiction on the basis of a section of the United States Criminal Code, 18 U.S.C. § 1001, which establishes criminal penalties for anyone who "knowingly and willfully (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry" in a matter within the jurisdiction of the federal government. 18 U.S.C. § 1001. Generally, violations of the Criminal Code may not serve as the basis for a civil cause of action unless the criminal statute includes an express or implied private right of action. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (holding that a private cause of action is only created where the federal statute is phrased in "rights-creating" terms, and manifests an intent to create a private remedy); *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone . . . ." (citing *Cort v. Ash*, 422 U.S. 66, 79–80 (1975))); *Hill v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006) ("A private individual may bring suit under a federal [criminal] statute only when Congress specifically intended to create a private right of action."); *Bey v. New York*, No. 11-CV-3296, 2012 WL 4370272, at *7 (E.D.N.Y. Sept. 21, 2012) ("[T]here is no private right of action under criminal statutes . . . ."). Section 1001 does not provide a private cause of action for litigants engaged in a civil dispute. *See, e.g.*,

*Faraldo v. Kessler*, No. 08-CV-261, 2008 WL 216608, at *6 (E.D.N.Y. Jan. 23, 2008) (citing cases finding no private right of action under Section 1001); *Williams v. McCausland,* 791 F. Supp. 992, 1001 (S.D.N.Y. 1992) (same).

Plaintiff also claims that Defendants have violated "my rights under the 4th and 5th Amendments of the US Constitution, the New York State Constitution Article I Section 1, § 7 and § 12 and USC Title 18 Sections § 286, § 287, § 1001, § 1651, § 1652, § 1653, § 1655, § 1656, § 1659 and § 1660." (Compl. ¶ 2.) These additional sections of the Criminal Code relating to piracy and fraudulent claims made to government officials neither provide a private cause of action nor appear to have any relevance to Plaintiff's claims. *See, e.g.*, *Tombardi v. Quinones*, No. 98-CV-1921, 2000 WL 852431, at *7 (D. Conn. March 31, 2000) ("The act of piracy, prohibited by 18 U.S.C. § 1652, is a criminal statute that does not offer relief for a private cause of action.")

The Court has also considered Plaintiff's allegation that his civil rights were violated as a basis for the Court's jurisdiction. Title 28 of the United States Code, Section 1983 imposes liability for constitutional deprivations caused by state actors, and cannot be applied to the actions of private individuals. As the Supreme Court has held, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotations omitted); *see Khulumani v. Barclay Nat. Bank Ltd.*, 504 F.3d 254, 313 (2d Cir. 2007) (noting that private conduct is excluded from the reach of § 1983 (citing *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 49–50), *aff'd sub nom. Am. Isuzu Motors, Inc. v. Ntsebeza*, 553 U.S. 1028 (2008); *O'Donnell v. Card*, No. 11-CV-3297, 2013 WL 3929632, at *3 (S.D.N.Y. July 30, 2013) ("In order to state a

claim under Section 1983, a plaintiff must allege that . . . the alleged violation was committed by a person acting under color of state law." (citing *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 49–50)). Each of the named Defendants is a private individual or corporate entity. Plaintiff has not alleged that any Defendant is a state actor or is acting in concert with a state actor. Thus, there is no basis for a civil rights action against the named Defendants. The Court finds that the Complaint does not assert any valid basis for this Court's jurisdiction over Plaintiff's claims.

### c. State Law Claims

Plaintiff's claims related to breach of contract and liens filed with New York State and New York City may assert state law claims that could be raised in New York state courts. This Court does not have jurisdiction over these issues. Moreover, it appears that some of these issues have already been litigated in state court, wherein a justice of the Kings County Supreme Court issued an order restoring other parties to possession and enjoining Plaintiff from interfering with various premises located on Sapphire Street and Stanley Avenue that were allegedly encumbered by Plaintiff's liens. (*See* Exhibit F.) Accordingly, a subsequent federal court action related to those premises would be barred by the *Rooker-Feldman* doctrine, which prohibits state-court litigants from inviting federal courts to review and reverse unfavorable state-court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The *Rooker–Feldman* doctrine prohibits federal district courts from reviewing cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. This is frequently the case in foreclosure situations. *See Ashy v. Kolinsky*, 328 F. App'x 20, 21 (2d Cir. May 6, 2009)

(affirming dismissal on *Rooker-Feldman* grounds where plaintiff's "underlying injury . . . was the foreclosure on her property caused by the state court order" and "she filed her complaint after the state court order had been entered."); *see also Webster v. Wells Fargo Bank, N.A.*, No. 08-CV-10145, 2009 WL 5178654, at *5 (S.D.N.Y. Dec 23, 2009) (court lacks subject matter jurisdiction because in substance it is an attack on the foreclosure proceeding); *Done v. Wells Fargo Bank, N.A.*, No. 08-CV-3040, 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009); *Feinstein v. Chase Manhattan Bank,* No. 06-CV-1512, 2006 WL 898076, at *2 (E.D.N.Y. Apr. 4, 2006). In *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 83 (2d Cir. 2005), the Second Circuit clarified the four requirements for application of the *Rooker–Feldman* doctrine: (1) "the federal-court plaintiff must have lost in state court"; (2) "plaintiff must complain of injuries caused by a state-court judgment"; (3) "plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." 422 F.3d at 85 (internal quotations omitted); *see also Gabriele v. Am. Home Mortgage Servicing, Inc.*, 503 F. App'x 89, 92 (2d Cir. 2012) (explaining the four requirements of the *Rooker–Feldman* doctrine).

      To the extent that Plaintiff seeks to overturn the state court's orders enjoining him from interfering in the specified properties at Sapphire Street and Stanley Avenue, such claims are barred by the *Rooker-Feldman* doctrine. From the attached exhibits, it appears that Plaintiff lost in state court and was enjoined from interfering with the listed properties. Plaintiff's injuries — the loss of any rights in those properties — were caused by the state-court judgment. Plaintiff's requested relief is to have "all previous orders of all lower courts vacated concerning the properties, and possession of properties turned over to Roger Wagner for Possession." Finally,

the state-court judgment was rendered on May 30, 2013, before Plaintiff filed this case. For these reasons, *Rooker-Feldman* applies to Plaintiff's demand to vacate the state court orders, and this Court lacks jurisdiction to overturn the state court judgment.

Plaintiff has not alleged that the citizenship of the parties is diverse and therefore diversity jurisdiction is not available. As Plaintiff neither raises a question of federal law, nor asserts diversity jurisdiction, the Court has no basis for federal subject matter jurisdiction over this action.

### III. Conclusion

The Court does not have subject matter jurisdiction over Plaintiff's claims. Accordingly, the Complaint is dismissed pursuant to Fed. R. Civ. P. 12(h)(3). Plaintiff's request for emergency injunctive relief is denied. Any state law claims are dismissed without prejudice. Although Plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED:

\_\_\_s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: August 30, 2013
       Brooklyn, New York